# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZITO MEDIA, L.P., | |
| Plaintiff, | 4:17-cv-1676 |
| v. | Hon. John E. Jones III |
| JAMES M. HAGGERTY, FELICE C. HAGGERTY, JOSEPH HAGGERTY, and MICHELE HAGGERTY, | |
| Defendants. | |

## **MEMORANDUM**

## **May 29, 2018**

Presently pending before the Court are cross Motions for Summary Judgment. (Docs. 14 & 17). For the reasons that follow, we shall deny Plaintiff's Motion, (Doc. 14), and grant Defendants' Motion, (Doc. 17).

## I.   FACTUAL BACKGROUND

This case raises an unsettled question of law related to the Cable Communications Policy Act of 1984 ("Cable Act"). 47 U.S.C. §§ 521, *et seq.* The Cable Act amended the Communications Act of 1934, 47 U.S.C. §§ 151, *et seq.*, with six stated purposes: to

> (1) establish a national policy concerning cable communications;
>
> (2) establish franchise procedures and standards which encourage the growth and development of cable systems and which assure that cable

> systems are responsive to the needs and interests of the local community;
>
> (3) establish guidelines for the exercise of Federal, State, and local authority with respect to the regulation of cable systems;
>
> (4) assure that cable communications provide and are encouraged to provide the widest possible diversity of information sources and services to the public;
>
> (5) establish an orderly process for franchise renewal which protects cable operators against unfair denials of renewal where the operator's past performance and proposal for future performance meet the standards established by this subchapter; and
>
> (6) promote competition in cable communication and minimize unnecessary regulation that would impose an undue economic burden on cable systems.

47 U.S.C. § 521. At issue before us is § 541(a)(2) of the Cable Act, which provides that "[a]ny franchise shall be construed to authorize the construction of a cable system over public rights-of-way, and through easements, which is within the area to be served by the cable system and which have been dedicated for compatible uses . . . ." 47 U.S.C. § 541(a)(2). In this case, all material facts being undisputed, Plaintiff, Zito Media, L.P. ("Zito"), seeks to install fiber optic cables on an electric line easement on a parcel of undeveloped property owned by Defendants, James M. Haggerty, Felice C. Haggerty, Joseph Haggerty, and Michele Haggery ("the Haggertys").

On July 19, 2017, Zito Media Communications, LLC, a sister company of Zito, was granted a cable franchise by Wysox Township, in Bradford County,

Pennsylvania.  (*Id.* at ¶ 4).  Zito Media Communications, LLC, assigned the franchise agreement to Zito on August 1, 2017.  (*Id.* at ¶ 6).  Zito holds itself out as a provider of high-speed broadband and internet, digital cable television, and digital voice communications services for customers in a number of states, including Pennsylvania.  (Doc. 18, ¶ 9).

The Haggertys, as noted, own an undeveloped parcel of property in Wysox Township, which was conveyed to them on January 18, 2000.  (Doc. 16, ¶ 8).  The Haggertys' property is traversed by an electric utility easement containing a number of utility poles, electric transmission wires, and other facilities which are owned by Pennsylvania Electric Company ("Penelec"), a subsidiary of FirstEnergy Corporation.  (*Id.* at ¶ 10).  The easement was originally granted by the Haggertys' predecessors in title in 1944 to a predecessor entity of Penelec known as Northern Pennsylvania Power Company ("NPPC").  (*Id.* at ¶ 11).  The easement granted NPPC, and its successors and assigns, the right to "construct, maintain, and operate an electric line consisting of H frames, conductors, overhead and underground lightning protective wires, private communications wires, guys, push braces, and other necessary apparatus and equipment. . . ."  (*Id.* at ¶ 13).  The easement further granted NPPC and its successors and assigns the right "to install on said line such additional apparatus and equipment as Grantee may deem necessary. . . ."  (*Id.* at ¶ 14).

Sometime in March 2017, representatives of Zito sought to utilize the easement and to affix its fiber optic cables to Penelec's poles within the easement and subsequently executed an agreement with Penelec obtaining permission to do so. (*Id.* at ¶ 15; Doc. 18, ¶ 12). The Haggertys have refused to permit Zito access to the easement and have expressly informed Zito that it may not affix its fiber optic cables to the Penelec poles in the easement. (Doc. 16, ¶ 16).

## II. PROCEDURAL HISTORY

Zito initiated this action by filing a Complaint on September 18, 2017, seeking declaratory and injunctive relief. (Doc. 1). In its Complaint, Zito alleges that the Haggertys' exclusion of Zito violates Section 621(a)(2) of the Cable Communications Policy Act of 1984, 47 U.S.C. § 541(a)(2) ("Cable Act"). The Haggertys filed their Answer on October 2, 2017. (Doc. 8). On March 29, 2018, Zito filed the instant Motion for Summary Judgment, (Doc. 14), along with its supporting brief, (Doc. 15), and statement of facts, (Doc. 16). On April 2, 2018, the Haggertys filed their Motion for Summary Judgment, (Doc. 17), statement of facts, (Doc. 18), and supporting brief, (Doc. 19). Both sides filed opposing briefs, (Docs. 20, 24), and Zito filed a timely reply brief, (Doc. 25). The time for the Haggertys to file a reply brief has passed and, thus, we consider the motions ripe for review.

## III. STANDARD OF REVIEW

Summary judgment is appropriate if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a fact is "material" only if it might affect the outcome of the action under the governing law. *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 172 (3d Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A court should view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences therefrom, and should not evaluate credibility or weigh the evidence. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

Initially, the moving party bears the burden of demonstrating the absence of a genuine dispute of material fact, and upon satisfaction of that burden, the non-movant must go beyond the pleadings, pointing to particular facts that evidence a genuine dispute for trial. *See id.* at 773 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). In advancing their positions, the parties must support their factual assertions by citing to specific parts of the record or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or

that an adverse party cannot produce admissible evidence to support the fact." FED. R. Civ. P. 56(c)(1).

A court should not grant summary judgment when there is a disagreement about the facts or the proper inferences that a fact finder could draw from them. *See Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (citing *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982)). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Layshock ex rel. Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205, 211 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 247-48) (internal quotation marks omitted).

## IV. DISCUSSION

With the aforesaid factual backdrop established, we are tasked with how to interpret § 541(a)(2) of the Cable Act as it applies to this scenario. As stated earlier, § 541(a)(2) provides, in part, that "any franchise shall be construed to authorize the construction of a cable system over public rights-of-way, and through easements, which is within the area to be served by the cable system and which has been dedicated for compatible uses. . . ." 47 U.S.C. § 541(a)(2). Zito concedes there is no public right-of-way here. Rather, Zito argues that the easement previously granted to NPPC has been "dedicated for compatible uses" and, therefore, Zito is authorized under the Cable Act to install its fiber optic cables on

the preexisting poles. The Haggertys argue that the easement has not been dedicated as such and, further, that the Cable Act does not confer a private right of action upon Zito. The Haggertys also suggest, in their Answer, that Zito's access to the easement would constitute an unconstitutional taking.

Unfortunately, Congress has not provided a definition of the phrase "dedicated for compatible uses" and this omission has generated significant confusion and disagreement among the district and circuit courts. Of primary confusion among the courts is whether to interpret "dedicated" as a legal term of art or according to its ordinary and common meaning. As a term of art, "dedicated" in the context of property law indicates that the property "was set apart . . . to some public use; as to make a private way public by acts evincing an intention to do so." *RCN Telecom Services, Inc. v. DeLuca Enterprises, Inc.*, 413 F.Supp.2d 464, 469-70 (E.D.Pa. 2005) (quoting Black's Law Dictionary 371 (1979)). If construed according to its ordinary meaning, however, "dedicated" permits a much broader reading, suggesting that the Cable Act applies equally to private easements, "so long as they have been set aside for compatible uses." *Id.*

To date, four circuit courts have specifically addressed the proper construction of the term, and each of the courts has favored the legal definition. *See Cable Arizona Corp. v. Coxcom, Inc.*, 261 F.3d 871, 874 (9th Cir. 2001) ("We . . . agree that [§ 541(a)(2)] provides a right of access over private easements only if

7

the property owner has appropriated and set aside those easements for general use."); *TCI of North Dakota, Inc. v. Schriock Holding Co.*, 11 F.3d 812, 814 (8th Cir. 1993) ("A plain reading of § 541(a)(2) mandates application of the legal definition of 'dedicated.'"); *Media General Cable of Fairfax, Inc. v. Sequoyah Condominium Council of Co-Owners*, 991 F.2d 1169, 1173 (4th Cir. 1993) ("Since 'dedicated' is a term of art with reference to property matters, we should use that definition in preference to the ordinary definition found in *Webster's*."); *Cable Holdings of Georgia v. McNeil Real Estate Fund VI, Ltd.*, 953 F.2d 600, 602 (11th Cir. 1992) ("Section [541(a)(2)] authorizes a franchised cable company's access to easements on private property only when the private property owner has dedicated those easements for the general use of any utilities."). The Third Circuit has not yet decided this particular issue but does note that the term is used ambiguously. *See Cable Investments, Inc. v. Woolley*, 867 F.2d 151, 155 (3d Cir. 1989).

While acknowledging the trend of the courts in adopting the legal definition, Zito nevertheless asks us to interpret the term in its ordinary sense, relying on the reasoning of the Southern District of Indiana. *See West v. Louisville Gas & Electric Co.*, 4:16-cv-00145-RLY-TAB, 2018 WL 321686 (S.D.In. Jan. 8, 2018). The Court in *West* noted that the circuit courts have been "largely guided by the canon of constitutional avoidance." *Id.* Indeed, the circuit courts have expressed concern that construing "dedicated" in the broader, ordinary sense may ultimately

permit cable companies to effectuate unconstitutional takings. In particular, the circuit courts refer back to the United States Supreme Court's opinion in *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982). In *Loretto*, the Supreme Court found that a New York law requiring landlords to permit cable companies to install equipment on their buildings amounted to a compensable taking. 458 U.S. at 426.

In *West*, the United States District Court for the Southern District of Indiana distinguished *Loretto*'s facts, noting that the law in that case "granted cable operators an absolute right to install its cable systems on a landlord's property *regardless of whether an easement had been granted.*" *West*, 2018 WL 321686, at *6 (emphasis added). By contrast, "[t]he Cable Act only permits access to *pre-existing* utility easements; it does not allow a cable provider to *create* an easement." *Id.* The *West* court reasoned that concern about unconstitutional takings is not an issue because using a pre-existing utility easement in a compatible way "does not place any additional burden on the property." *Id.* Thus, the Court determined, construing "dedicated" in the ordinary sense would not permit an unconstitutional taking.

Faced with a similar argument, the Eleventh Circuit reached the opposite conclusion. In *McNeil*, the Court noted that every modern residence, for the most part, "is linked to electric, telephone, and/or video programming services," which,

if we read the term broadly, would grant "franchised cable companies the same unencumbered right of access to private property which the Supreme Court held to be a compensable taking in *Loretto*." *McNeil*, 953 F.2d 600, 605. With such a reading, the only way for a property owner to exclude a cable provider would be to deprive himself or his tenants of basic utility services. *Id.* "We doubt whether the government may so condition a property owner's right to exclude." *Id.* The Eleventh Circuit further counseled caution to "tenaciously guard[]" a landowner's "right to exclude another's physical presence" and noted that interpreting "dedicated" as giving access to "*all* easements is so broad and so fraught with constitutional difficulties" that the Court should be "reluctant to accept it unless Congress so provided with the clearest of language." *Id.* at 606. Finally, the Court reasoned that Congress's use of the term "dedicated" in connection with easements "at least suggests a reference to the legal meaning of 'dedication.' In general, an easement is legally 'dedicated' only when the private property owner entirely relinquishes his rights of exclusion regarding the easement so that the general public may use the property." *Id.* (citing *Black's Law Dictionary* 412 (6th ed. 1990)).

Zito appears to argue, to the contrary, that the Eleventh Circuit *supports* the broader reading. In particular, Zito cites *Centel Cable TV Co. v. Thos. J. White Dev. Corp.*, No. 88-14148, 1989 U.S. Dist. LEXIS 19064 (S.D.Fla. Feb. 28, 1989),

10

*aff'd* 902 F.2d 905 (11th Cir. 1990). We find Zito's argument unpersuasive, however. The *Thos. J. White* case involved utility corridors designated on a subdivision plan, which, as will be discussed below, are considered "dedicated" even under the legal definition. As such, those utility easements were within the scope of the Cable Act and available for the cable provider's access regardless of how the term is interpreted. Furthermore, in affirming the district court, the Eleventh Circuit's analysis was focused the land developer's attempt to exclude a cable provider from accessing those public easements by designating the roadways as "private" rights-of-way and prohibiting the cable provider from traversing them. *Centel Cable Television Co. of Florida v. Thos. J. White Dev. Corp.*, 902 F.2d 905, 909 (11th Cir. 1990). The Eleventh Circuit affirmed the District Court's holding that such an arrangement was not permissible under the Cable Act. Two years later, in *McNeil*, the Eleventh Circuit reiterated the limited holding of *Thos. J. White* and explicitly adopted the legal definition of "dedicated." We therefore find that Zito's argument to the contrary is unavailing.

Considering both the *West* and *McNeil* decisions, we are more persuaded by the Eleventh Circuit's analysis. The ubiquity of utility connections not only in public spaces but also into individual residences would give cable companies unfettered access regardless of the property owners' interests. Additionally, as the circuit courts have noted, including the Third Circuit, in its original form the Cable

Act included a section requiring landlords of multi-unit dwellings to permit access to cable companies, provided they receive just compensation. H.R.Rep. No. 934, 98th Cong., 2d Sess. 59. Significantly, Congress dropped this provision from the final bill that was enacted, including the mandate for devising a method to calculate just compensation. "The fact that section 633 was not part of the Act as it ultimately emerged from Congress is a strong indication that Congress did not intend that cable companies could compel the owner of a multi-unit dwelling to permit them to use the owner's private property to provide cable service to apartment dwellers." *Cable Investments, Inc. v. Woolley*, 867 F.2d 151, 156 (3d Cir. 1989). If we were to adopt the ordinary meaning of "dedicated," however, then logically cable companies could still demand access to individual multi-unit dwellings simply by "piggybacking" utility easements that extend into the building.

Of course the case at bar does not involve multi-unit dwellings. But the point remains that Congress contemplated the very actions that would be permitted by a broader reading of "dedicated," complete with a method for calculating just compensation, and deliberately deleted the section. This legislative history is instructive. If Congress did not intend to permit cable providers mandatory access to multi-unit dwellings, then it makes little sense to interpret "dedicated" in such a way that would permit it. Accordingly, we find that the only reasonable

interpretation of "dedicated" is according to its legal definition. The Cable Act, therefore, only permits Zito to access easements that have been dedicated for public use.

Adopting the legal definition, we must now consider whether the easement here was so dedicated. As noted, the term "dedicated" in the legal sense indicates an appropriation and setting aside of "one's private property to some public use; as to make a private way public by acts evincing an intention to do so." *RCN Telecom Services,* 413 F.Supp.2d at 469-70. Most courts have noted that something short of a formal dedication can still serve to "dedicate" an easement for public use. The most common instance is where a developer files a subdivision plan showing corridors identified for general utility use. In such cases, courts have found that the filing of such plans constitutes a dedication to public use. *See id.* at 470; *McNeil*, 953 F.2d at 608. The easement here, though, is of a different kind. The easement grants to NPPC the right to construct and maintain an electric line across a marked-off section of the property. There is no indication that the prior owner who granted the easement intended for it to be a formal dedication to public use, nor was it granted as a general utility easement open to any other utilities. The easement is specifically granted to NPPC. Therefore, we cannot find that the easement was dedicated to compatible uses and, consequently, the Cable Act does not apply.

As noted earlier, the parties raise other arguments regarding whether Zito has a private right of action under the Cable Act or whether Zito's access to the easement would constitute a compensable taking. Because we find that the Cable Act does not permit access to the easement at issue, we have no need to consider these latter two arguments. Therefore, we shall grant Defendants' Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment.

V. **CONCLUSION**

For the foregoing reasons, we shall grant Defendants' Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment. An order commensurate with this memorandum will issue separately.